JACOB SAILER, Respondent, v. UNITED STATES RAILWAY ADMINISTRATION, W. D. Hines, Director General, and Northern Pacific Railway Company, a Corporation, Appellants.

(181 N. W. 57.)

**Carriers — carrier assuming care of stock for which shipper was to provide attendant was liable for negligence.**

    In an action against a carrier for damages sustained in a live-stock shipment, where there is evidence in the record that milch cows were shipped in good condition, and where, although shipment was made under a live-stock

---

NOTE.—On the question of statutory duties of carriers of live stock with reference to care of stock during transportation, see note in 44 L.R.A. 449.

    On duty of carrier of live stock as to feeding and watering stock during transportation, see notes in 43 Am. St. Rep. 446, and 63 Am. St. Rep. 554.

contract which provided for an attendant to accompany the cows, nevertheless there is evidence in the record from which the jury might find that the company became aware that the cows were not attended, and thereupon furnished feed, care, and attention to such cows, it is *held*, pursuant to the findings of the jury, that the carrier thereupon assumed a duty and was liable for its negligence in the performance thereof.

Opinion filed December 31, 1920.   Rehearing denied January 18, 1921.

Action in District Court, Mercer County, *Lembke,* J., to recover damages upon a live-stock shipment.

Judgment affirmed as to the Director General, and dismissed as to the Railway Company.

*Young, Conmy, & Young,* for appellants.

The court erred in refusing to dismiss the action as to Northern Pacific Railway Company.   McGrath v. Northern P. R. Co. (N. D.) 177 N. W. 383.

In computing delay of shipment of cattle, due consideration must be made of the stops for feed, water, and rest.   St. Louis, I. M. & S. R. Co. v. Carlisle (Tex. Civ. App.) 78 S. W. 553; Hickey v. Chicago, B. & Q. R. Co. (Mo. App.) 160 S. W. 24.

For the plaintiff to recover there must be proof of delay.   Johnston v. Chicago, B. & Q. R. Co. (Neb.) 97 N. W. 482; Clevex v. Chicago, B. & Q. R. Co. (Neb.) 108 N. W. 982.

There must be proof that the delay was negligent.   Clark v. St. Joseph & G. I. R. Co. (Mo. App.) 122 S. W. 318; McDowell v. Missouri P. R. Co. (Mo..App.) 152 S. W. 435.

The court must submit, on his own motion, all the issues raised in the trial.   Moline Plow Co. v. Gilbert, 3 Dak. 239, 15 N. W. 1; Owen v. Owen, 22 Iowa, 270; Forzen v. Hurd, 20 N. D. 42, 120 N. W. 224; Barton v. Gray, 57 Mich. 622, 24 N. W. 638; Putnam v. Prouty, 24 N. D. 530; Sackett v. Stone (Ga.) 41 S. E. 564; Dikeman v. Arnold (Mich.) 40 N. W. 42; Chicago, R. O. & P. R. Co. v. Buskstaff (Neb.) 91 N. W. 426; Boyd v. St. Louis Transit Co. (Mo.) 83 S. W. 287.

Where there are two theories, the court must submit both.   Cerrillos Coal R. Co. v. Deserant (N.·M.) 49 Pac. 807; McCarty v. Houston & T. C. R. Co. (Tex.) 54 S. W. 421.

*John Moses* and *Norton & Kelsch,* for respondent.

Robinson, J.  On May 16, 1919, plaintiff shipped over the Northern Pacific Railway from South St. Paul to Hazen, North Dakota, thirty-one head of cows in good condition.  Five days afterwards, when the animals arrived at Hazen, their condition was terrible to behold.  They were nearly starved, many of them were unable to walk or to eat.  Six of them died within a few days.  Five cows had calves prematurely, of which some died in the car and the others died within a few days.  At Hazen a veterinary was called and tried to milk the cows that had calved, but the milk had dried up and turned to putrid matter and the cows had a high fever.  The calves had not sucked them and they had not been milked.  The value of the animals that survived was greatly reduced, and the jury gave plaintiff a verdict for damages, $850, with interest from May 21, 1919.  Plaintiff paid freight charges, $110.26.

To quote and book the evidence would serve only to waste time and add to the tax burdens.  The parties have their copies and strangers have no interest in the matter.

The counsel does insist that there is no evidence of negligence on the part of the carrier, but there is positive evidence to show the good condition of the animals at the time and place of shipment and showing their pitiful condition on arrival at Hazen.  It shows beyond question that the carrier was guilty of very gross negligence and want of care, and even cruelty to the animals.  It shows damages in excess of the verdict.  The testimony is entirely convincing and the verdict is very moderate.  Hence the long string of objections, exceptions, and errors assigned do merit no consideration.

In this case there was no express contract between the plaintiff and the Director General.  In the shipping bill the carrier named is the Northern Pacific Railway Company, not the Director General, who had taken control of the railway.  Hence the judgment must be corrected by striking out the name of the Northern Pacific Railway Company, both in the title of the action and in the body of the judgment wherever the same occurs.  There will be no judgment either against the Northern Pacific Railway Company or in its favor, and as thus corrected, the judgment is affirmed, with costs in favor of the plaintiff.

Corrected and affirmed.

Grace, J.  I concur in the result.

BRONSON, J. (specially concurring). I concur in the affirmance of the judgment as to the Director General and for its dismissal as to the railway company. I am of the opinion that the record presents questions of fact for the jury concerning the negligence of the carrier in failing to give proper care and protection to the milch cows shipped. There is evidence in the record that these cows, when shipped, were in good condition. Although shipment was made under a live-stock contract which provided for an attendant to accompany the cows, nevertheless, there is evidence in the record from which the jury might find that the company became aware that the cows were not attended, and furnished feed, care, and attention even to the extent of services furnished and charged in assisting one of the cows when giving birth to a calf. The carrier thereupon assumed a duty and was liable for its negligence in the performance thereof. See Morrell v. Northern P. R. Co. 46 N. D. 535, 179 N. W. 922; Chicago, B. & Q. R. Co. v. Williams, 61 Neb. 608, 55 L.R.A. 289, 85 N. W. 832; Chicago, B. & Q. R. Co. v. Slattery, 76 Neb. 721, 124 Am. St. Rep. 825, 107 N. W. 1045, 20 Am. Neg. Rep. 405; Millam v. Southern R. Co. 58 S. C. 247, 36 S. E. 571; Spalding v. Chicago, B. & Q. R. Co. 101 Mo. App. 225, 73 S. W. 274; McGrath v. Northern P. R. Co. L.R.A.1915D, 644, and note (121 Minn. 258, 141 N. W. 164); Trout v. Gulf, C. & S. F. R. Co. — Tex. Civ. App. —, 111 S. W. 222; 10 C. J. 97. Although more complete instructions might have been given upon the issues, I am of the opinion that the prime question of the carrier's negligence was fairly tried and submitted to the jury, and that no prejudicial error exists in the record, with respect to the carrier held.

CHRISTIANSON, Ch. J., and BIRDZELL, J., concur.

On Petition for Rehearing, Filed January 18, 1921.

PER CURIAM. Upon a petition for rehearing the carrier complains that there is no evidence of negligence on the part of the carrier concerning this shipment of live stock. That the failure to milk the cows was not negligence. In this regard there is evidence in the record of inspection by the switch foreman of the carrier when the stock was

47 N. D.—9.

shipped, and of further inspection by the railway employees at every stop as this carload of stock proceeded en route. There is evidence in the record to charge carrier with knowledge that this carload of stock was unaccompanied by an attendant. There is further evidence in the record that the carrier did give care and attention to the stock, even to the extent of taking care of one of the cows while it was delivering a calf. For these services it made and collected a charge therefor. As heretofore stated, we are of the opinion that this assumption of care and duty under the circumstances created a duty for which the carrier was liable for its negligence. When the carrier became aware of natural propensities of the cows, in their then present condition, and it undertook, as the evidence discloses, to provide care and aid the acts of nature, it thereupon assumed a duty extending beyond the mere acts of feeding and watering, which were then only some of the personal demands of the cattle. Manifestly, if the natural propensities had been given an opportunity to act naturally, milking might not have been required at all. The artificial conditions that existed after the carrier became aware of the conditions of the cattle were conditions of the carrier's own creation, and were conditions that could be ameliorated by the carrier's care and attention. It sought so to do, and the measure of this care and attention in that regard, upon this record, was a question of fact for the jury.

Again, the carrier complains because the issue of plaintiff's negligence was not submitted to the jury, for the reason that the carrier did not know and were not informed covering the conditions of the cows when shipped, and, further, that the jury were not given an opportunity to pass upon the question whether the injury was occasioned through the natural propensities and physical condition of the cattle or through the negligence of the carrier. Prejudicial error did not occur by reason of the failure of the trial court to submit such issue to the jury. The evidence discloses without contradiction that the cows were in good condition when loaded. The carrier, after it became aware of the condition of the cattle, may not excuse its lack of care and attention thereto because of the failure of the plaintiff to notify the carrier concerning the character of the shipment. See Chicago, B. & Q. R. Co. v. Williams, 61 Neb. 608, 55 L.R.A. 289, 291, 85 N. W. 832; 10 C. J. 97. Complaint is also made that the trial court prejudicially charged the

jury that the plaintiff might recover for the unreasonable delay in transportation, whereas as a matter of law there is no show of unreasonable delay in the record.   Under the circumstances in this case the element of time in transportation was an element likewise that concerned the care and attention requisite for these cattle after the carrier became aware of their condition.   Furthermore, the carrier read into the record a stipulation concerning the time of transportation wherein, pursuant to the stipulation, an error of twelve hours was made apparently by stating the time of departure as being 9:05 A. M. instead of the correct time, 9:05 P. M.   Even though this may have been a clerical error for the reason that the foreman of the stockyard at Dilworth testified that on this day the carload was reloaded at Dilworth at 7:15 P. M., and presumably they left that evening instead of at the prior time, to wit, 9:05 A. M., nevertheless neither the court nor the jury were advised of the error, and assuredly the carrier is not in a position to complain of prejudicial error by reason of its own voluntary act in introducing an erroneous computation of the time of the transportation which contained therein an apparent issue of unreasonable delay in the time of actual transportation.   The trial court likewise did not err prejudicially, as the carrier claims, in permitting the introduction of evidence showing that these cattle were bought for sale on the market as milch cows.   The questions thereupon were in the nature of preliminary questions, and the answers thereto did not constitute prejudicial error.   The petition for rehearing is denied.

CHRISTIANSON, Ch. J., and BRONSON, ROBINSON, and BIRDZELL, JJ., concur.